Filed 4/26/16  In re L.C. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | B265087<br><br>(Los Angeles County Super. Ct. No. NJ28073) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>L.C.,<br><br>    Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John C. Lawson II, Judge.  Affirmed.

Bruce G. Finebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

In this juvenile delinquency case, the court sustained a petition alleging robbery against appellant L.C. Appellant asserts the court committed prejudicial error when it denied him a second continuance to secure a witness's attendance. We affirm.

## FACTS AND PROCEDURE

### 1. Petition

The Los Angeles County District Attorney filed a petition under section 602 of the Welfare and Institutions Code alleging appellant, then 15 years old, committed robbery (Pen. Code, § 211) by taking personal property from Therin M. The petition identified companion cases against David J. and Jaylen J. The prosecutor moved to dismiss the petition against Jaylen on March 20, 2015 because he "no longer ha[d] confidence [in] the prosecution of Jaylen." Recent statements of the victim indicated Jaylen was not involved with the alleged robbery. The court granted the motion to dismiss as to Jaylen. Defense counsel gave Jaylen a subpoena to testify at appellant's adjudication hearing, and the court placed Jaylen on call to appellant's counsel for the date of the adjudication hearing, April 10, 2015.

### 2. Adjudication Hearing

On August 15, 2014, Therin wore a gold chain to school that was a gift from his parents. It was a rather large chain; each link was approximately a half-inch long. Therin went to a campus restroom and encountered David and appellant there. David asked him if the chain was real, and Therin replied "yes." Therin was washing his hands when appellant approached him from behind, restrained Therin's arms, and held his neck. David took the chain from Therin's neck as appellant restrained Therin. David ran out of the bathroom and appellant released Therin approximately five seconds later. Therin chased after David. Therin told David, "I don't want to fight with you, but I want my chain back." Therin took out his phone and told David he was going to call for help, and David said, "Don't make me take your phone."

Therin spoke with Los Angeles School District Police Officer Hilda Galindo later that day. He told Officer Galindo a fourth boy, Jaylen, was in the bathroom as well when the chain was taken from him. Jaylen was using the urinal, but he was not involved in the

2

robbery. He did not recall telling Officer Galindo that Jaylen spoke while they were in the restroom. He may have "misworded" what he told Officer Galindo about Jaylen because he did not intend to say Jaylen was involved in the crime. He merely wanted the officer to know there was another witness who could support his assertion that the chain belonged to him. Therin also told school officials Jaylen was uninvolved in the crime.

Officer Galindo testified that Therin told her Jaylen was one of two individuals who held Therin while David took the chain. He also told her Jaylen said, "Let's just hurry up."

When Officer Galindo spoke with David, he initially denied being involved or being in the restroom at all. Officer Galindo found a picture of David wearing the gold chain on David's cellular phone. After she confronted him with this picture, David admitted to taking Therin's chain and said appellant was with him.

Appellant also initially denied being in the restroom when Officer Galindo spoke to him. He later recanted and acknowledged that he lied to the officer and was present in the restroom when David took the chain. He denied being involved, however.

Appellant testified in his defense to the following effect. He and Jaylen were friends, but David was more of an "associate" with whom appellant would exchange greetings. On the relevant date, he and Jaylen entered the restroom together and Therin and David were already there. Appellant went to the restroom to use the facilities. He heard Therin and David discussing a marijuana transaction while he and Jaylen were in the restroom stalls. Therin voluntarily took off the chain and gave it to David, who put on the chain and "ran off." Neither appellant nor Jaylen touched Therin or said anything to him. Appellant admitted that he initially lied to Officer Galindo because he "didn't want to get caught up in it." He did not know why David would have identified him as being with David when he took the chain.

After the parties adduced the foregoing evidence, appellant's counsel requested a continuance to call Jaylen, who had not appeared in court that day. Appellant's counsel apparently did not realize or did not recall that Jaylen had been placed on call to defense counsel and had relied on the prosecutor to call Jaylen. Appellant's counsel said he had

3

"reason to believe that [Jaylen] offered an affirmative evidence that [appellant] was not involved in the event," and he wanted to call him as a witness for that purpose. The court granted a continuance of 20 days for appellant's counsel to secure Jaylen's attendance in court.

Jaylen did not appear at the continued hearing 20 days later on April 30, 2015. According to appellant's counsel, he started his efforts to locate Jaylen the week of April 20 by engaging a private investigator to serve a subpoena on Jaylen. The investigator made telephone contact with Jaylen's mother, who declined to meet with the investigator and said Jaylen did not want to testify. The investigator hired another person to serve process because Jaylen's mother knew what the investigator looked like. The investigator's agent was unable to locate Jaylen and opined that Jaylen was avoiding service of process. Counsel was not clear on what efforts the agent had made to serve Jaylen. He believed the investigator's agent had attempted to serve Jaylen twice at his home address. When the court asked whether the investigator knew where Jaylen attended school, counsel replied that he understood Jaylen had changed schools.

Counsel requested an additional unspecified amount of time to bring Jaylen to court. When the court asked, "[W]hat makes you think if this court grants a continuance, that the results would be any different?," counsel replied, "I don't have any information that would indicate a change."

The court denied the request for another continuance. The court noted that there were only two attempts to serve Jaylen at his home address—there was no evidence the investigator had tried to serve his mother at work, make contact through school authorities, or find out what new school he was attending, if that was the case. Further, the court noted counsel could not say whether more time would be fruitful.

The court sustained the petition against appellant (as well as the petition against David) and declared the offense a felony. The court ordered appellant placed home on probation for six months. Appellant filed a timely notice of appeal.

4

## DISCUSSION

Appellant contends the court erred in denying him a second continuance to secure Jaylen's attendance, but we disagree.

The court shall grant a continuance of a criminal trial "only upon a showing of good cause. Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." (Pen. Code, § 1050, subd. (e); see Cal. Rules of Court, rule 4.113 ["Motions to continue the trial of a criminal case are disfavored and will be denied unless the moving party, under Penal Code section 1050, presents affirmative proof in open court that the ends of justice require a continuance."].) The decision whether to grant a continuance rests in the sound discretion of the court, and we review the denial of a continuance for abuse of discretion. (*People v. Fuiava* (2012) 53 Cal.4th 622, 650 (*Fuiava*).) "'[A]n order denying a continuance is seldom successfully attacked.'" (*Ibid.*)

"To support a continuance motion to secure a witness's attendance at trial, a showing of good cause requires a demonstration, among other things, that the defendant exercised due diligence to secure the witness's attendance." (*People v. Wilson* (2005) 36 Cal.4th 309, 352 (*Wilson*).) Other pertinent factors include whether the witness's anticipated testimony was material and not cumulative and whether the testimony could be obtained within a reasonable time. (*People v. Howard* (1992) 1 Cal.4th 1132, 1171.)

Here, the trial court did not abuse its discretion in denying appellant a second continuance because his attempt to establish good cause was inadequate in at least two respects. First, he failed to demonstrate due diligence to secure Jaylen's attendance. The court granted him an initial continuance of nearly three weeks to secure Jaylen's attendance. Defense counsel did nothing to locate Jaylen for over a week, and then the week before the continued trial date, counsel had the investigator start his attempts. The investigator's agent apparently attempted service twice at home, knowing that Jaylen did not want to testify. But he or she did nothing to try to locate Jaylen at school or learn if he had, indeed, switched schools. There was also no evidence that he or she attempted to discover the mother's place of employment and serve her there. The court's determination that this record failed to demonstrate diligence was not "outside the bounds

of reason." (*Fuiava, supra*, 53 Cal.4th at p. 650; see *Wilson, supra*, 36 Cal.4th at p. 352 [court did not abuse its discretion in denying motion for continuance when the defendant failed to demonstrate diligence].)

Second, appellant failed to demonstrate that Jaylen's testimony could be obtained within a reasonable time. When the court inquired into this area, defense counsel acknowledged that he did not "have any information that would indicate a change" if given more time. Counsel did not even specify how much time he was requesting for a continuance.

In light of these factors, especially the lack of diligence in attempting to secure Jaylen's testimony, we conclude the court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

6